UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ESTATE OF EDWARD IDZIOR, et al., | |
| Plaintiffs, | Case No. 2:10-CV-00449-KJD-PAL |
| v. | **ORDER** |
| MEDSOLUTIONS, INC., et al., | |
| Defendants. | |

Currently before the Court is Defendant AETNA Life Insurance's ("AETNA" or "Defendants") Motion to Dismiss (#6). Plaintiffs filed a Response (#18), to which Defendants filed a Reply (#21). Specifically, Defendants seek that the Court dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. 12(b)(6) for failure to state a claim upon which relief may be granted.

**I. Background**

This case arises from an insurance action filed by the Estate of Edward Idzior against Defendants AETNA Life Insurance Company and Medsolutions Inc., alleging that Defendants' denial of coverage for medical tests recommended by Edward Idzior's ("Mr. Idzior") physician ultimately resulted in Mr. Idzior's death. In 1989, Mr. Idzior suffered a heart attack in Richmond, Virginia, where he received medical treatment. Subsequently, Mr. Idzior and his wife moved to Nevada, where he began working as a maintenance writer at Bechtel Saic Company ("Bechtel") and

received group health insurance as a participant in the Bechtel insurance plan.  On or around December 24, 2002, Mr. Idzior felt pressure in his chest and was taken to Houma General Hospital in Houma, Louisiana, where he was told he needed immediate heart surgery.  Mr. Idzior was advised by his physician to fly back to Nevada for immediate treatment.  Mr. Idzior flew back to Las Vegas, where he underwent triple bypass heart surgery.  As a result of the bypass surgery, Mr. Idzior received ongoing medical treatment including stress and dye tests to reveal possible artery blockage.

On or before February 2008, Mr. Idzior again began feeling pressure in his chest.  His physician requested he obtain Myrocardial perfusion imaging ("MPI"), Myrocardial perfusion study with wall motion, qualitative or quantitative study, and Myocardial perfusion study with ejection fraction (referred to collectively herein as "tests").  (Compl. ¶ 13.)  Mr. Idzior's doctor contacted AETNA and/or Medsolutions to request coverage and approval to conduct the tests to determine Mr. Idzior's artery blockage.  On April 7, 2008, Medsolutions wrote a letter denying coverage on the basis that the clinical information submitted did not describe new signs or symptoms of heart disease.  Resultantly, Mr. Idzior did not receive the tests, as he could not afford them absent insurance coverage.  On February 23, 2009, Mr. Idzior suffered a heart attack and died later that same day.  Mr. Idzior's attending physician noted that the cause of Mr. Idzior's death was a heart attack due to his right coronary artery being 100% occluded, his left internal mammary artery to left anterior descending artery being 100% occluded, and his left anterior descending artery being 100% occluded. (See Compl. ¶ 21.)

Plaintiffs filed their Complaint in State Court on February 4, 2010, alleging six claims for relief: (1) Bad Faith Denial of Insurance Claim; (2) Breach of Contract; (3) Breach of the Implied Covenant of Good Faith and Fair Dealing; (4) Wrongful Death; (5) Negligence; and (6) Loss of Consortium.  Defendant AETNA removed the case to federal court on March 31, 2001.  Here, AETNA avers that Plaintiffs' claims should be dismissed because they are state law claims that "relate to" an employee health benefit plan governed by the Employment Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"), and thus, are preempted.

Plaintiffs, in opposition, do not contend that their claims for relief do not "relate to" ERISA, but instead, aver that Defendant has failed to provide sufficient information to demonstrate that the Plan at issue here is governed by ERISA.

**II. Standard of Law for Motion to Dismiss**

Pursuant to Fed. R. Civ. P. 12(b)(6), a court may dismiss a Plaintiff's complaint for "failure to state a claim upon which relief can be granted." A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." Twombly, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (internal citation omitted).

In Iqbal, the Supreme Court recently clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the Court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. Id. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. Id. at 1949. Second, the Court must consider whether the factual allegations in the complaint allege a plausible claim for relief. Id. at 1950. A claim is facially plausible when the Plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. at 1949. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." Id. (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, Plaintiff's complaint must be dismissed. Twombly, 550 U.S. at 570.

3

**1. ERISA**

As stated above, the parties do not contest the authenticity of the Plan document, but rather, whether said Plan is an ERISA governed plan.[1] The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person. Stuart v. UNUM Life Ins. Co. of Am., 217 F.3d 1145, 1149 (9th Cir. 2000). "To determine whether an insurance plan is an ERISA plan, a district court considers 29 U.S.C. § 1002(1), which defines an employee welfare benefit plan, and 29 C.F.R. § 2510.3-1(j), which clarifies the meaning of 'establishing and maintaining' such a plan." Meadows v. Emp'rs Health Ins., 826 F.Supp. 1225, 1228 (D.Ariz.1993). An "employee welfare benefit plan" is:

> [A]ny plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of . . . accident, [or] death. . . .

29 U.S.C. § 1002(1); see also Kanne v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 492 (9th Cir. 1988). Although the mere purchase of insurance does not alone constitute an ERISA plan, the purchase of insurance may be evidence of the existence of an ERISA plan. Kanne, 867 F.2d at 492.

---

[1] If matters outside of the pleadings are submitted in conjunction with a motion to dismiss, Rule 12(b) grants courts discretion to either accept and consider, or to disregard such materials. See Isquith v. Middle S. Utils., Inc., 847 F.2d 186, 193 n. 3 (5th Cir.1988). A court exercises this discretion by examining whether the submitted material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, may facilitate disposing of the action. Id. at 193 n. 3. If the court elects to convert the motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. Such consideration does "not convert the motion to dismiss into a motion for summary judgment." Branch v. Tunnell, 14 F.3d 449 (9th Cir. 1994)(citing Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 n. 3.)(overruled on other grounds). Here, neither side questions the authenticity of the benefit plan document at issue.

Here, as stated, the Court need not convert the Motion to one for summary judgment under Rule 56. The Court notes however, that even if it were to convert the filing to a Rule 56 Motion, claim preclusion would apply, as Plaintiff's Opposition acknowledges the documents attached to AETNA's Request for Judicial Notice (#7), and reattached them to their Opposition (#18) to AETNA's Motion to Dismiss.

**A. Safe Harbor**

As stated above, Plaintiffs argue that the Plan at issue does not qualify as an ERISA plan because it is subject to ERISA's "safe harbor regulation." The Department of Labor's "safe harbor regulation" further specifies that an "employee welfare benefit plan" shall not include a group insurance program offered by an insurer to members of an employee organization, under which:

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). Because exclusion under this "safe harbor" provision requires all four elements, "a group insurance plan cannot be excluded from ERISA coverage when an employer fails to satisfy any one of the four requirements of the safe harbor regulation." Stuart, 217 F.3d at 1153 ("employers must satisfy all four requirements of the safe harbor regulation for otherwise qualified group insurance plans to be exempt from ERISA coverage"). Contrary to Plaintiffs' assertion, an examination of the above listed factors demonstrates that the subject plan cannot qualify under the safe harbor regulation. Specifically, the Court finds that the Plan at issue cannot fit within the safe harbor regulation because Plaintiffs cannot show that Bechtel did not make any contributions to the Plan, or that Bechtel's sole function with respect to the benefit program at issue was "without endorsing the program" to permit the insurer to publicize the program to employees, collect premiums through payroll deductions and remit them to the insurer.

1  The benefit Plan at issue specifically explains the Plan participants' rights under ERISA, and
2  designates Bechtel as the Plan Administrator.   Additionally the Plan information provided by
3  Bechtel to all participants specifically states that the source of the contributions are from the
4  employer and the employee.  (#7 Ex. 2.)  The Plan also indicates that Bechtel selected AETNA to
5  provide comprehensive healthcare insurance to its current employees, and continuing coverage for
6  some former employees, such as early retirees.  (Id. Ex. 2–5.)  Additionally, after selecting AETNA
7  as its insurance provider, Bechtel negotiated a comprehensive benefit Plan for its employees, as
8  indicated by the Plan document which states that it was "prepared exclusively for Bechtel SAIC
9  Company, LLC."  (Id. Ex. 2.)  Moreover, it is undisputed that Bechtel provided Plan participants
10 with "additional information" explaining participants' rights under ERISA.  Thus the Court finds that
11 ERISA's safe harbor provision does not apply to Plaintiffs' benefit Plan.

**B. Preemption**

Section 514(a) of  ERISA, generally "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "A 'law 'relate[s] to' a covered employee benefit plan for purposes of § 514(a) 'if it [1] has a connection with or [2] reference to such a plan." California Div. of Labor Standards Enforcement v. Dillingham Const., N.A., Inc., 519 U.S. 316, 324 (1997) (quoting District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 129 (1992)). "Where a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation . . . that 'reference' will result in pre-emption." Dillingham, 519 U.S. at 325.

Section 502(a) of ERISA provides the statute's civil enforcement scheme.  See 29 U.S.C. § 1132(a).  It is well established that "[a] state cause of action that would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme, even if those causes of action would not necessarily be preempted by section 514(a)." Cleghorn v. Blue Shield of Cal., 408 F.3d 1222, 1225 (9th Cir. 2005).  "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy

conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004).

Any conflicting state-law claim that could have been brought under section 502(a) and does not implicate a legal duty independent of ERISA, is completely preempted. Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 945 (9th Cir. 2009) (citing Davila, 542 U.S. at 210). Complete preemption not only acts as a federal defense to state-law claims that conflict with ERISA's relevant provisions, but also automatically converts such claims into federal claims for the purpose of establishing federal question jurisdiction. Id. at 945.

Plaintiffs do not argue that their state law claims should not be preempted under ERISA. As stated above, Plaintiffs' sole argument in opposition to Defendants' Motion is that Defendants have not provided sufficient support for their claim that the Plan at issue is an ERISA Plan. Plaintiffs request that in the event that the Court finds the Plan to be governed by ERISA, they be provided an opportunity to re-characterize their claims. AETNA does not oppose this request.

Because the Court finds that the Plan at issue is an ERISA Plan, and because Plaintiffs' six claims for relief are preempted under Section 502(a), Defendants' Motion should be granted, and Plaintiffs shall have the opportunity to re-characterize their claims.

### III. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendant AETNA Life Insurance's Motion to Dismiss (#6), is **GRANTED**. Plaintiffs shall file have up to and until April 10, 2011, in which to file an Amended Complaint.

DATED this 4th day of March 2011.

_____
Kent J. Dawson
United States District Judge